CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 17 2007

JOHN F. CORCORAN, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SAMUEL MORRIS OVERSTREET,<br>Petitioner, | Civil Action No. 7:06-cv-00609 |
| v. | **MEMORANDUM OPINION** |
| UNITED STATES OF AMERICA,<br>Respondent. | By: Hon. James C. Turk<br>Senior United States District Judge |

Petitioner Samuel Morris Overstreet, a federal inmate proceeding pro se, brought this action as a motion to vacate, set aside or correct sentence, pursuant to 28 U.S.C. § 2255, and later filed an amended motion. Petitioner challenges the validity of his confinement pursuant to the 2005 judgment of this court sentencing him to 63 months imprisonment, following his conviction on charges that he possessed an unregistered silencer and machine gun and that he unlawfully possessed a firearm after having been committed to a mental institution. Respondent has filed a motion to dismiss, and petitioner has responded, making the matter ripe for the court's consideration. Upon review of the record, the court concludes that the motion to dismiss must be granted.

I

The presentence report (PSR) in Overstreet's case summarized the evidence that the government had gathered against him as follows:

> On September 17, 2003, the Roanoke Field Office of Bureau of Alcohol, Tobacco and Firearms received information from an individual who worked in a machine shop, that the defendant, Samuel Morris Overstreet, had solicited this person on previous occasions to produce silencers. Mr. Overstreet had also provided this individual with written plans on how to produce silencers. On December 18, 2003, a Roanoke County Police Department Patrol Officer responded to the defendant's residence at 166 Verndale Drive in Roanoke, Virginia in reference to an extra patrol request made by the defendant. While at the residence, this officer engaged in a conversation about firearms with Mr. Overstreet, which led to him directing the officer to a closet in the basement of his residence, which contained numerous firearms. He displayed his collection to the police officer including a "Tec-9" style firearm with a threaded barrel, a "Uzi-style" firearm with a threaded barrel and a "Makarov-style pistol with a threaded barrel." The police officer inquired if the defendant possessed any silencers for the firearms with threaded barrels. He produced from a shelf in his closet, two metal cylinders. Overstreet advised the police officer they were silencers and then attached the devices to the Tec-9 style firearm and the Uzi-style firearm. The defendant discussed and displayed to the police officer numerous publications on how to convert various firearms to function

1

in an automatic variant, and how to produce silencers for various firearms. Mr. Overstreet described to the police officer how the silencers functioned and stated that he had discharged his firearms equipped with silencers in his backyard and that they were very effective.

After the Roanoke County Patrol Officer contacted the Bureau of Alcohol, Tobacco and Firearms, a search warrant was obtained and was executed on December 23, 2003. Three devices appearing to be silencers were recovered during the search, although it is noted that when tested, one of the devices did not function as a silencer. Additionally, an AK-47 fully automatic conversion kit, which is designed to convert a semi-automatic rifle to a fully automatic rifle, was recovered. Miscellaneous paperwork on producing silencers and converting firearms to full automatic mode was also recovered. In addition to these items, numerous firearms were recovered. . . .

It was later determined that the defendant had previously been involuntarily committed to a mental institution and was prohibited from possessing firearms.

Presentence Report, Para. 5-7.

Authorities arrested Overstreet on December 23, 2003, on a complaint charging him with possession of unregistered silencers. The court appointed counsel for Overstreet and ordered him released on bond. Thereafter, Overstreet retained counsel. A grand jury later returned a one-count indictment, charging him with that same offense, and trial was set for April 9, 2004. Overstreet moved for a continuance of his trial until June 10, 2004, and the court granted it. On May 5, 2004, a grand jury returned a four-count superseding indictment, charging Overstreet with possession of an unregistered silencer as defined in 18 U.S.C. § 921(a)(24) and a machine gun, in violation of 26 U.S.C. §§ 5841, 5845(a)(6), 5845(a)(7), 5861(d), and 5871 (Count One); possession of a firearm after previously being adjudicated as a mental defective and having been committed to a mental institution, in violation of 18 U.S.C. § 922(g)(4) (Count Two);[1] possession of a machine gun, in violation of 18 U.S.C. § 922(o) (Count Three); and forfeiture of certain firearm-related property owned by the defendant (Count Four). Another continuance set the trial date for August 3, 2004.

On June 16, 2004, Overstreet was arrested for violating the conditions of his release. The court conducted a hearing and ordered him detained. The next day his retained counsel moved to

---

[1]Although the indictment charged Overstreet with having been "adjudicated as a mental defective and having been committed to a mental institution," (emphasis added), § 922(g)(4) prohibits possession of firearms by any one who has previously been "adjudicated as a mental defective or has been committed to a mental institution." Overstreet fails to demonstrate any ground for relief based on this typographical error, however.

2

withdraw from the case. The court granted counsel's motion and appointed Attorney Melvin Hill to represent Overstreet. Another continuance brought the trial date to August 27, 2004. Before this date arrived, however, Overstreet's new counsel moved for a psychiatric evaluation of the defendant. The court granted the motion, and on January 26, 2005, received a report that Overstreet was competent to stand trial. The court conducted a competency hearing two days later and determined that Overstreet was competent. The trial was set for February 15, 2005.

Overstreet entered into a written plea agreement with the government, allowing him to plead no contest to Count One of the indictment. The terms of the agreement called for the government to dismiss all the other counts and to argue that Overstreet only be held responsible for possession of the firearms prohibited by the National Firearms Act--the two silencers and the machine gun. The government also agreed not to move for enhancement of Overstreet's sentence for obstruction of justice, despite evidence of numerous incidents of deception on his part, as outlined in Paragraphs 9-16 of the PSR. Under this agreement, Overstreet received a two-level reduction in offense level for acceptance of responsibility, but waived his right to appeal or to bring a § 2255 motion. The agreement also required him to consent to the forfeiture of the silencers, a machine gun parts kit, and twenty firearms. The court conducted a plea colloquy with Overstreet on February 14, 2005. The court found that his plea was knowing and voluntary and accepted the no contest plea and the agreement.

Overstreet appeared for sentencing on May 11, 2005. The court overruled Overstreet's objections to the PSR, but allowed him to withdraw the no contest plea and proceed to trial. On the morning of trial, June 20, 2005, Overstreet indicated his intention to plead guilty. During the plea colloquy, however, he stated that he did not understand what he was doing because of the medication he was taking. At that point, the court terminated the plea hearing and directed that a jury be empaneled. After a panel of jurors was selected and the court had instructed them, Overstreet again announced that he wished to enter a guilty plea to Counts One and Two without a written plea

3

agreement, based on the prosecutor's oral promise to dismiss Count Three at the time of sentencing if Overstreet pled guilty.

During this third and final plea colloquy on June 20, 2005, Overstreet indicated that he was forty-seven years old, that he had completed college, that he understood the charges to which he was pleading guilty and the maximum sentences he faced for those charges, (as recited to him by the court), and that he was pleading "guilty" to those charges. Overstreet specifically denied that his medications were affecting his ability to understand fully what he was doing. He specifically denied that anyone had put any pressure on him to plead guilty or had promised him anything, other than dismissal of Count Three at sentencing. The court asked him, "So when you tell me you want to plead guilty to Counts One (1) and Two (2), you're acting voluntarily, of your own volition, free from threats, promises, compulsion, or duress?" Overstreet answered, "Yes, sir." He indicated to the court that he was satisfied with the way his attorney had handled his case. The court then recited the rights Overstreet would be waiving if he entered a guilty plea, and Overstreet indicated that he understood. The court stated, "A plea of guilty is an admission here in open court before everyone in the courtroom that you did those things charged in Counts One (1) and Two (2) of the indictment," recited the maximum sentences he faced, and the manner in which the sentence would be calculated under the sentencing guidelines. Overstreet indicated that he understood all these things.

The court then asked Overstreet to describe, in his own words, what he had done that made him guilty.

> THE COURT: Had you been committed to a mental institution at some time or other?
> MR. OVERSTREET: I had been committed for one (1) day for observation.
> THE COURT: Did the - - -
> MR. OVERSTREET: On some days, but he only talked to me one (1) day.
> THE COURT: Did they - - - were you admitted by court order?
> MR. OVERSTREET: Yes, sir.
> THE COURT: It wasn't a voluntary commitment on your part?
> MR. OVERSTREET: No, sir.
> THE COURT: All right. And then back on December of what was it, 2003? Did you have in your possession some firearms?
> MR. OVERSTREET: Yes, sir.
> . . . .

| | |
|---|---|
| THE COURT: | Did you have a machine gun kit that you could have assembled a machine gun from? |
| MR. OVERSTREET: | I had in my possession a parts replacement kit that if you took the receiver out of the rifle and did certain drillings on it and remounted a bunch of parts - - - |
| THE COURT: | It would classify as a machine gun? |
| MR. OVERSTREET: | And put a new bolt in it, it would classify as a machine gun, but - - - |
| THE COURT: | And did you also have a silencer? |
| MR. OVERSTREET: | Yes, sir. |
| THE COURT: | You did? |
| MR. OVERSTREET: | I had two (2) of them. Yes, sir. |
| THE COURT: | And you had some other firearms, did you not? |
| MR. OVERSTREET: | Yes, sir. I collect them. |

Tr. June 20, 2005, at 19-20. The court then found Overstreet's plea to be knowing and voluntary, had him execute a written guilty plea form,[2] and accepted the plea. The government then proffered the evidence in support of the guilty plea, and the court found Overstreet guilty of Counts One and Two.

On July 15, 2005, the court conducted a sentencing hearing. The government moved to enhance Overstreet's Base Offense Level for obstruction of justice[3] and the number of firearms possessed and to deny any reduction based on acceptance of responsibility. The court found that his base offense level was 20, granted a four-point increase for the number of firearms possessed, granted a two-point increase for obstruction of justice, and granted a two-point decrease for acceptance of responsibility, giving him an adjusted offense level of 24 and a guidelines range of 51-63 months in prison. Ultimately, the court sentenced Overstreet to serve 63 months in prison.

---

[2]The court read the guilty plea form aloud to Overstreet:
In the presence of my counsel, who has fully explained the charges contained in the indictment against me, and having received a copy of the indictment from the United States Attorney before being called upon to plead, I hereby plead guilty to said indictment, Counts One (1) and Two (2) thereof. I have been advised of the maximum punishment which may be imposed by the court for this offense. My plea of guilty is made knowingly and voluntarily and without threat of any kind or without promises, other than those disclosed here in open court.
Tr. June 20, 2007, at 21.

[3]In support of the enhancement for obstruction of justice, the government presented evidence that among other things, Overstreet fabricated evidence and made false criminal accusations against government witnesses.

5

On appeal to the United States Court of Appeals for the Fourth Circuit, Overstreet's counsel argued that the sentence should not have been enhanced for obstruction of justice. Overstreet also filed two pro se briefs.[4] The appellate court affirmed the sentence on July 18, 2006, finding that granting a reduction for acceptance of responsibility was not inconsistent with a simultaneous enhancement for obstruction of justice. United States v. Overstreet, No. 05-4767, **1 190 Fed.Appx. 291, 293 (4th Cir. 2006). The Fourth Circuit also addressed Overstreet's pro se claims:

> Overstreet has also requested leave to file a pro se supplemental brief alleging ineffective assistance of counsel as well as raising additional claims. . . . We grant Overstreet's motion to file a pro se supplemental brief.
>
> . . . .
>
> We have considered the issues raised by Overstreet in his pro se supplemental brief and find no merit in them. . . . His claim of ineffective assistance is not properly raised in this direct appeal.

Id. Overstreet filed his § 2255 motion in October 2006.

Overstreet's amended § 2255 motion, filed December 14, 2006, summarizes his alleged grounds for relief:

A.  Counsel provided ineffective assistance in that he

    1.  refused to have contact with petitioner;

    2.  refused to follow petitioner's requests;

    3.  refused to recuse himself because of a conflict of interest;

    4.  refused to have an evidentiary hearing;

    5.  refused to investigate defenses;

---

[4]In his pro se appellate pleadings, Overstreet argued that (1) he was not mentally defective as classified by 18 U.S.C. § 922(g)(4); (2) the conviction should be reversed because police acted with "deliberate elicitation"; (3) he is actually innocent of illegal machine gun possession because an ATF agent told him the parts kit he had did not require registration; (4) ineffective assistance; (5) his guilty plea was unknowing because he was on painkillers; (6) the search warrant was invalid because of "deliberate elicitation"; (7) he pled guilty to a non-offense because the machine gun parts and silencers seized did not match statutory descriptions of items for which he was indicted; (8) he was never committed to mental institution and considered incompetent as classified by 18 U.S.C. § 922(g)(4) because he was only admitted for observation and required no medication on discharge; (9) the government was "fraudulent with the court by violation of judicial estoppel"; (10) his Fifth Amendment rights were violated when he was found guilty of a charge not stated in the indictment; and (11) the prosecutor committed misconduct by making slanderous and false statements against him at sentencing and on appeal.

6. refused to let petitioner see discoveries and other information that could have been used in defense;

7. refused to challenge an illegal sentence enhancement;

8. had petitioner plead guilty to two non-violations;

9. coached petitioner and "flashcarded" him through the guilty plea hearing and sentencing;[5]

10. did not advise petitioner of the true meaning of the law (i.e. definitions of machine gun and "committed to a mental institution");

11. told petitioner that 27 C.F.R. § 1572.109 did not apply in his case;

12. did not propose jury instructions on the definitions of machine gun or 27 C.F.R. § 1572.109;

13. did not question the government's "judicial estoppel as seen in Argument 4";

14. did not raise the multiplicity issue with the indictments;

B. Count One should be dismissed because:

1. the indictment was broadened just as in the Nieves case;

2. an ATF letter shows the machine gun trigger set was not illegal;

3. the silencer count of the indictment charges petitioner under 18 U.S.C. § 921(a)(24), not 26 U.S.C. § 5861(d);

4. the silencers had appropriate paperwork;

5. the "silencer barrel extension" that petitioner plead guilty to was "never turned in";

6. 26 U.S.C. §5861(d) was dismissed after petitioner pled guilty to it;

7. docket sheet indicates that petitioner is accountable for 26 U.S.C. §5841, although he was not indicted under this section;

---

[5]Overstreet also alleges in the initial § 2255 motion that counsel allowed him to plead guilty, knowing that his ability to understand the proceedings was compromised by the medications he was taking. Although he omits this allegation from his summary of claims in the amended § 2255 motion, the court will consider this claim as part of A9.

7

C. The indictment was faulty because:

1. It was broadened to include machine gun parts, not just a machine gun as charged;

2. Indictment 1 was not dismissed before petitioner stood trial on superseding indictment;

3. jury instructions about machine guns and ATF regulations should have been presented;

D. Count Two should be dismissed because:

1. petitioner was never adjudicated as a mental defective;

2. petitioner was never committed to a mental institution;

3. the government "set up a judicial estoppel" by stating that petitioner was competent;

4. petitioner was never found incompetent as required to pursue a § 922(g)(4) charge;

5. the Court of Appeals of Virginia ruled that petitioner was not "committed" for purposes of § 922(g)(4);

6. Federal evaluation states that petitioner does not have and never had a mental disorder;

E. The guilty plea was no voluntary and knowing because:

1. Petitioner was told if he would take the plea he would get "time served";

2. counsel said he was unprepared for trial and did not plan on offering a defense;

3. counsel withheld the true meaning of the law concerning machine gun and definition of "committed";

4. Petitioner was on tranquilizers and other strong medication during Rule 11 hearing;

5. counsel did not inform the jury of the true meaning of the law concerning "committed" and machinegun;

F. The search warrant was illegal because:

1. it was based on "deliberate elicitation";

2. a restraining order barred Mike Vaughn from being at petitioner's home;

8

3. Vaughn's statement conflicts with statements by other witnesses and ATF agents;

G. The sentence was illegal because:

1. it was unconstitutionally enhanced;[6]

2. it was "unjustifiably enhanced giving Chris Hermann [too] much power" over petitioner;

H. The prosecutor committed misconduct when he

1. set up "judicial estoppel";

2. tried to influence the court using a non-existent assault and battery on Chris Herman;

3. stated that petitioner took out cross warrants on Chris;

4. stated petitioner sent letter to Chris, when the prosecutor actually "manufactured" the letter;

5. stated that petitioner lied about Mike Vaughn's actions, which were recorded;

6. stated petitioner pressured witnesses into falsifying signatures;

7. lied to court about weapons being fired in petitioner's backyard;

8. had Chris illegally remove "ammo" from petitioner's home;

9. "covered up issues about David Flynn, problems Roanoke County Police Department and restraining order";

10. "covered up the lawyer that defended David Flynn and other Roanoke County Cops was in the same law firm as was now defending petitioner"; and

11. allowed Chris Herman to coerce witnesses and pay them to change their stories;

Overstreet also argues repeatedly that he is "actually innocent" of the charges to which he pled guilty.

## II

### A. ISSUES ALREADY DECIDED

---

[6] At different times, Overstreet argues that his sentence was illegally enhanced for obstruction of justice and based on the number of weapons found at his residence.

9

Once an issue has been considered and decided by the Court of Appeals, the defendant cannot relitigate the issue before this court under §2255. See Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) (finding that § 2255 petitioner "will not be allowed to recast, under the guise of collateral attack, questions fully considered" by the court of appeals in direct appeal proceedings). Respondent argues that all of Overstreet's court error and prosecutorial misconduct issues were raised and decided on appeal. Upon review of the record, the court agrees.

Indeed, in a cover letter to his initial § 2255 motion, Overstreet states that the § 2255 motion is "almost the same" as the brief he filed in the court of appeals, with an identical appendix. Review of the issues in the pro se appellate briefs bears out this assertion, as most of the claims of court error and prosecutorial misconduct raised in the § 2255 motion as amended track the issues in the appellate briefs he submitted. As stated, the Fourth Circuit's per curiam opinion indicates that although the court found Overstreet's ineffective assistance claims could not be addressed on appeal, the court nevertheless reviewed the other issues presented in his pro se briefs and found them to be without merit. Because the appellate court has already decided against Overstreet on these specific arguments, this court cannot revisit them in this § 2255 proceeding and will dismiss them accordingly: B1, B2, B3, B6, B7, C1, D1, D2, D3, D4, E4, F1, H1, H2, H3, H4, H5, and H6.[7]

Moreover, other arguments Overstreet makes in his § 2255 motion are also barred from review by this court, because the Fourth Circuit has already decided the underlying issues to which the arguments are related. First, the Fourth Circuit decided against Overstreet on the issue of whether the evidence (the items seized from his residence and testimony about his past use of silencers and machine guns) supported his conviction on Count One of the indictment, despite the evidence he offered as attempted proof of actual innocence. Therefore, this court will also dismiss

---

[7] Overstreet primarily contends that he is actually innocent of both charges to which he pled guilty. As he made this assertion in the appellate briefs as well, it too was decided against him by the Fourth Circuit. In any event, a claim of actual innocence is not in itself a constitutional claim or a ground for habeas relief. Herrera v. Collins, 506 U.S. 390 (1993).

10

Claims B4, B5, C2, and C3 as these claims are merely supplemental arguments to the issue of whether his conviction on Count One should have been dismissed.[8]

Second, the Fourth Circuit decided against Overstreet on his arguments that his conviction on Count Two of the indictment should be dismissed because nothing in his mental health history met the definition of having been adjudicated as a mental defective or having been committed to a mental institution for purposes of conviction under § 922(g)(4). Overstreet's own submissions to the court of appeals indicate that he was admitted to Catawba Hospital in September 1989 and in February 1990 on an involuntary legal basis.[9] He fails to prove that one or both of these involuntary admissions would not satisfy the "commitment" element of a § 922(g)(4) violation.[10] See United States v. Midgett, 198 F.3d 143, 146 (4th Cir. 1999) (finding that commitment for purposes of § 922(g)(4) prohibition is question of federal law); United States v. Dunford, 148 F.3d 385, 388-89 (4th Cir.1998) (finding that § 922(g)(4) was intended to apply to class of persons "who by reason of their status, Congress considered too dangerous to possess guns."). Contrary to Overstreet's assertions, the findings that he was competent at the time of the 2003 offense and competent to stand

---

[8]Overstreet's challenges to the superseding indictment itself are untimely, as all such objections must be raised before trial. Fed. R. Crim. P. 12(b). Also, because a superceding indictment "supercedes" the previous indictment, no dismissal order was necessary as to the first indictment.

[9]According to the discharge summary in 1989, Overstreet called the Sheriff's Department, stating that he was going to kill himself and had ingested sleeping pills and alcohol; officers found him with a loaded 9 mm. gun. They took him to the emergency room, where he was screened by Mental Health Services and cleared medically. After he spent two days in a Rehab Center, he was committed to Catawba "on involuntary papers" and discharged after two weeks of therapy and evaluation. According to the discharge summary in 1990, Overstreet threatened to harm himself, called a radio station, and a SWAT team intervened, finding him with a loaded gun in his possession in his house. At one point, the 1990 summary indicates that he was "admitted" on "voluntary papers," but the summary also indicates that he was "committed" to Catawba and mentions a commitment hearing that preceded his arrival at the hospital. Documents from the "Master Patient Index" indicate that both the 1989 and the 1990 admissions were on an involuntary legal basis.

[10]In his original § 2255 motion, Overstreet baldly states that the Court of Appeals of Virginia overturned a state judge's finding in 1990 that he was restricted from having firearms pursuant to 18 U.S.C. § 922(g)(4), restored all Overstreet's gun rights and stating that the 1990 hospitalization was not a commitment, pursuant to § 922(g)(4). Pet. at 20-21. His proffered documentation fails to support this assertion.

11

trial in 2005 have no bearing on whether his previous involuntary commitments to Catawba Hospital rendered him a prohibited person under § 922(g)(4).[11] For these reasons, the court will grant the motion to dismiss Claims D5 and D6.

Third, the court of appeals ruled against Overstreet on his challenges to the validity of the search warrant executed at his residence. Thus, the court will dismiss his additional arguments on this issue, Claims F2 and F3.

Fourth, the Fourth Circuit specifically held that the court acted reasonably in enhancing Overstreet's sentence for obstruction of justice and that the sentence complied with the principles set forth in United States v. Booker, 543 U.S. 220 (2005). Overstreet, 190 Fed. Appx. 291, **1. In dismissing his pro se brief, the court also found no merit to the assertions of prosecutorial misconduct. Overstreet's new arguments of illegal sentence enhancement and prosecutorial misconduct at sentencing all relate to the legality of his sentence. As the court of appeals has decided that the sentence was legal and not excessive, this court cannot revisit these issues under the guise of Overstreet's reframed arguments in Claims G1, G2, H7, H8, H9, H10, and H11; these claims will be dismissed accordingly.

### B. INEFFECTIVE ASSISTANCE CLAIMS

To prove a constitutional claim of ineffective assistance related to his guilty plea, a convicted defendant must meet a two prong standard, showing both counsel's deficient performance and resulting prejudice. Strickland, 466 U.S. at 685. First, he must show that "counsel's representation fell below an objective standard of reasonableness" considering circumstances as they existed at the time of the representation. Id. at 687-88. In evaluating counsel's performance, the court must be

---

[11]Similarly, the fact that Overstreet's name did not appear in a data base of persons prohibited from owning firearms does not prove his "innocence" of the necessary elements under § 922(g)(4). As the recent tragedy at Virginia Tech demonstrates, the data base used by gun dealers in screening potential gun buyers does not include all persons whose mental health history prohibits them under § 922(g)(4) from possessing firearms.

12

highly deferential to counsel's reasonable strategic decisions, avoiding the distorted effect of hindsight. Id. at 688-89. Second, petitioner must show prejudice stemming from counsel's deficiency. When counsel's error had some bearing on the validity of petitioner's guilty plea, a showing of prejudice will require petitioner to demonstrate "a reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 58-59. For counsel's alleged errors at sentencing or in appeal proceedings, petitioner must demonstrate "a reasonable probability" that but for the error, the result reached by a reasonable and impartial fact finder would have been different. Strickland, 466 U.S. at 694-95.

Several of Overstreet's ineffective assistance claims directly involve issues already decided by the Fourth Circuit during his appeal. Specifically, the appellate court rejected Overstreet's arguments that he pled guilty to two non-crimes, that his guilty plea was not voluntary because he was on medication during the plea hearing, and that his sentence was improperly enhanced based on the prosecution's evidence that he obstructed justice. Consequently, the court cannot find that trial counsel's alleged actions or omissions with regard to these meritless issues were either deficient performance or prejudicial to Overstreet's defense. Accordingly, without further discussion, the court will dismiss the following ineffective assistance claims as insufficient under Strickland and/or Hill: Claims A5 (failure to investigate defenses regarding definitions of silencers, machine guns, and involuntary commitment); A7 (failure to challenge illegal sentence enhancement); A8 (allowed petitioner to plead guilty to two non-crimes); A9 (to the extent that it alleges counsel erred in allowing Overstreet to plead guilty under the influence of medication); A10 (failure to advise petitioner about specific regulatory definition); A11 (misinformed petitioner about definition of machine gun or specific regulatory definition); A12 (no grand jury instructions on definitions); A13 (no objection to "judicial estoppel");[12] E3 (same as A11); and E5 (did not tell grand jury true

---

[12]Apparently, Overstreet's "judicial estoppel" argument arises from his confusion over the terms "involuntary commitment," "adjudicated as a mental defective," "competent to stand trial," and "competent at the time of the offense." As stated, the Fourth Circuit decided against Overstreet on his "judicial estoppel" argument as well as his argument that his mental health history did not support a § 922(g)(4) charge. Therefore, the court cannot find that counsel's failure to raise a

13

definitions of crime elements). The court will grant the motion to dismiss as to all of these ineffective assistance claims without further discussion.

Many of Overstreet's ineffective assistance claims are barred from review in this § 2255 proceeding because they simply are not credible in light of the statements Overstreet made to the court, under oath, in entering his guilty plea. See United States v. LeMaster, 403 F.3d 216, 221-22 (4th Cir. 2005), aff'g LeMaster v. United States, Case No. 7:02-cv-00794 (W.D. Va. 2003) ("In the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should . . . dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements."). When he entered his plea, Overstreet was forty-seven years old, had attended college, and gave no indication that he did not know the English language. During the hearing on June 20, 2005, he expressly denied that his medications prevented him from understanding the proceedings, affirmed that he understood the elements of the charges against him, affirmed that no one had promised him anything other than dismissal of the third criminal charge in exchange for his plea or put any pressure on him to plead guilty, and affirmed that he was satisfied with the actions of his attorney. Moreover, his comments during the several plea proceedings indicate that he was well aware of the elements of the charges to which he was pleading and quite capable of expressing himself.[13] From review of the record, the court finds that Overstreet's guilty plea was voluntary and knowing and sufficiently supported by evidence and therefore, that his plea was valid.

---

"judicial estoppel" objection related to that charge was deficient performance or prejudicial to the defense case.

[13]Overstreet attempts to argue that he did not plead guilty to the charges as stated in the indictment, because the conduct he described as evidence in support of the plea does not match the elements of the charges. (Tr. 6-20-05 at 19-20). He is mistaken. The court found the evidence in the record as a whole sufficient to support the guilty plea to the charges in the indictment. Id. at 27. See United States v. De Fusco, 949 F.2d 114, 120 (4th Cir. 1991) (finding that district court may determine factual basis for guilty plea under Rule 11(f) "from anything that appears in the record"); United States v. Morrow, 914 F.2d 608, 611 (4th Cir. 1990) (finding that trial court has broad discretion in determining existence of factual basis).

14

Overstreet now complains that his guilty plea was invalid for several reasons: he was told he would get "time served" if he pled guilty[14] (Claim E1); counsel said had no defense to present at trial (Claim E2); he was on strong medication during the plea hearing (Claim E4); counsel did not contact him (Claim A1), refused to follow his requests (Claim A2), refused to let him see discovery materials[15] (Claim A6), and "flashcarded" him through the plea hearing (Claim A9).[16] All of these claims are in direct contradiction of Overstreet's sworn statements to the court on June 20, 2005. Overstreet fails to offer any evidence of "extraordinary circumstances" demonstrating that his current assertions are more credible than his statements under oath at that third plea hearing. On this basis, the court will dismiss Claim A1, A2, A6, A9, E1, and E2 to the extent that they allege ineffective assistance preceding the entry of the guilty plea.

Furthermore, none of Overstreet's other allegations of ineffective assistance rise to constitutional proportions as defined in Strickland. He complains that counsel did not have sufficient contact with him and refused to follow his requests regarding investigation and development of a defense on sentencing issues by subpoenaing witnesses and objecting to the prosecutor's alleged misconduct during the sentencing hearing discussions of Overstreet's obstruction of justice. These claims fail. The prosecutor's questions of Overstreet during sentencing were proper cross-examination, and the court found Overstreet's testimony denying obstruction to be incredible. Likewise, the conclusory rebuttal evidence he now offers is not sufficient or credible

---

[14] In his response to the motion to dismiss, he states that he would have asked for new counsel because he was dissatisfied with Hill, but was told that such a motion would only delay proceedings and if he pled guilty, he would get "time served" so he could seek medical treatment from his own doctor. He now complains that several motions for new counsel were not addressed in detail, but during the plea hearing, he made no complaint about counsel or any pending motions. Moreover, he has not shown any ground on which he was entitled to new counsel.

[15] Overstreet admits that he does not know what "discovery materials" counsel failed to show him. Accordingly, he fails to meet either prong of Strickland as to this claim.

[16] The record does not support Overstreet's assertions that counsel coached and "flashcarded" him into making particular responses to the court during the plea and sentencing hearings.

15

enough to create a reasonable probability of a different outcome on obstruction or any other aspect of sentencing.[17] As such, Claims A1 and A2 as to sentencing fail under Strickland.

Overstreet also alleges that counsel did not contact him about what issues to raise in the direct appeal or include issues that Overstreet specifically requested. Yet, counsel has no constitutional obligation to raise on appeal every non-frivolous argument that petitioner requests. See Jones v. Barnes, 463 U.S. 745 (1983). Furthermore, as all of Overstreet's requested appeal issues were raised in his pro se briefs and rejected, he fails to demonstrate prejudice from counsel's omissions on appeal as alleged in Claims A1 and A2.

In Claim A3, Overstreet complains that counsel had a conflict of interest. To prove such a claim, petitioner must establish, by a preponderance of the evidence,(1) that a plausible alternative defense strategy existed that counsel might have pursued and (2) that counsel's failure to pursue the alternative strategy was linked to a conflict of legal interests. Mickens v. Taylor, 240 F.3d 348, 361 (4th Cir. 2001), aff'd 535 U.S. 162 (2002). Overstreet asserts that his trial attorney, Mr. Hill, had a conflict of interests, based on his law firm's alleged involvement in previous cases adverse to Overstreet. Overstreet's own documentation in "Appendix 1 Amended" proves that no such conflict existed.[18] Moreover, he does not point to any adverse affect on Hill's representation, stemming from this non-conflict or any other.[19] The court will dismiss this claim as frivolous.

---

[17] "A mere objection to the finding in the [PSR] is not sufficient." United States v. Terry, 916 F.2d 157, 162 (4th Cir.1990). Instead, Overstreet had a "duty to make a showing that the information in the [PSR was] unreliable, and articulate the reasons why the facts contained therein [were] untrue or inaccurate." Id. Finding that Overstreet had failed to offer any credible evidence contradicting the PSR evidence of obstruction of justice, the court was "free to adopt the findings of the [PSR] without more specific inquiry or explanation."Id. (internal quotation marks omitted).

[18] Overstreet presents documentation showing that he was a defendant in a lawsuit brought by Jerry Wayne Custer, who was represented in that case by Randy V. Cargill. Overstreet then presents a copy of letterhead from Hill's law firm, which lists the name of another attorney, James P. Cargill. His memory that an attorney named Randy Cargill once delivered mail to him at the jail for Mr. Hill does not prove that any conflict of legal interest existed or adversely affected him.

[19] Another seeming aspect of Overstreet's conflict claim is his assertion that counsel failed to inform the court of Overstreet's desire for new counsel. As stated, however, Overstreet fails to demonstrate any reasonable likelihood that new counsel would have been appointed. The case had

In A4, Overstreet asserts that counsel refused his requests for an evidentiary hearing; the court construes this claim as asserting that counsel should have moved to suppress the evidence found in Overstreet's home. The Fourth Circuit has already rejected Overstreet's challenges to the validity of the search warrant, however. The court cannot find counsel ineffective for failing to raise a meritless suppression motion. As the claim fails under both prongs of Strickland, the court will dismiss Claim A4.

Claim A14 complains that counsel should have moved for dismissal of the indictment on grounds of multiplicity. The counts against Overstreet were not multiplicitous, as each of them required an element of proof that the others did not require. See United States v. Love, 767 F.2d 1052, 1062-63 (4th Cir. 1985) ("Separate offenses involving the same or similar acts which violate different statutes may be charged and sentenced separately"). The court cannot find counsel ineffective for failing to make a meritless objection to the indictment and accordingly, will dismiss Claim A14 under Strickland.

Several times, Overstreet complains that counsel did not request jury instructions concerning the elements of Counts One and Two.[20] Since this case did not go to trial, perhaps he is complaining that but for counsel's failure to propose the desired instructions, he would not have pled guilty. As he failed to complain during the plea hearing about counsel's omission of instructions, however, the court does not find his current claim to be credible and dismisses it under Strickland.

---

already dragged on for months, and Overstreet fails to present any specific grounds on which new counsel (and additional delay of the case) were warranted; at most, he complains that he and counsel disagreed about trial preparation and strategies. See Morris v. Slappy, 461 U.S. 1, 13 (1983) (finding no constitutional right to meaningful relationship or ample opportunity to converse with attorney, so long as defendant receives constitutionally adequate representation). As he fails to show any reasonable probability that the motions for new counsel would have been granted, he fails to demonstrate prejudice under Strickland.

[20]Overstreet's claim that counsel was ineffective for failing to submit instructions for the grand jury is simply frivolous, as the topic of a grand jury proceeding is secret. FED. R. CRIM. P. 6(e)(2)(b). Defense counsel are not allowed to be present when the grand jury is in session. FED. R. CRIM. P. 6(d)(1).

17

Finally, Overstreet simply does not prove that absent counsel's alleged shortcomings, Overstreet's outcome would have been any better than it was.[21] The Fourth Circuit has already established that the evidence supported the charges against him in Counts One and Two. Thus, contrary to his repeated and lengthy arguments, he fails to demonstrate any reasonable likelihood that he would have been acquitted of these counts at trial. He also fails to demonstrate that he stood any likelihood of acquittal on Count 3 at trial, meaning that rejection of the plea bargain would likely have resulted in three convictions instead of two and almost no chance of receiving any reduction for acceptance of responsibility. Without that two-point reduction, his offense level after conviction at trial would have been 26, giving him a sentencing range of 63-78 months. As stated, the court finds no reasonable likelihood that any of the evidence Overstreet wanted counsel to present at sentencing would have been sufficient to disprove all the PSR grounds for the obstruction of justice enhancement. For the stated reasons, the court finds no constitutional violation under Strickland[22] and will grant the motion to dismiss as to all of Overstreet's claims of ineffective assistance of counsel.

---

[21]Counsel denies ever telling Overstreet that he would not defend him and states that he visited with his client fourteen times during the course of the representation and showed him all discovery materials allowed into the jail. He subpoenaed the witnesses that Overstreet requested, but says that interviews of those witnesses indicated that their testimony would have been detrimental to the defense case. Counsel did not find any legal ground on which Overstreet might have challenged the validity of the search warrant, because Officer Vaughn was invited into Overstreet's home, where the officer personally observed and discussed the firearms that he later reported to the Bureau of Alcohol, Tobacco and Firearms. Counsel's research of the law indicated that a machine gun can be defined as a kit designed to make a semi-automatic weapon into a fully automatic weapon, that Overstreet's commitments to Catawba met the standard under the statute, and that the charges did not violate double jeopardy. Counsel also denies any conflict of interest.

[22]Overstreet asserts that when he questioned counsel in April 2006 about his defense strategy and accused him of having Overstreet plead guilty to two offenses when he was not guilty, counsel said that he did not defend whites. He submits an affidavit from a fellow federal inmate who purportedly overheard this conversation. This accusation against counsel is completely unsupported by the record. As stated, Overstreet fails to establish any of his claims of ineffective assistance. Moreover, counsel clearly did "defend" Overstreet to the extent possible, given the evidence against him. He negotiated a favorable written plea agreement, which Overstreet rejected, was present for trial on two occasions, negotiated the plea bargain that was ultimately accepted, and pursued an appeal on his client's behalf. The fact that he and Overstreet disagreed about appropriate defense strategies does not prove racial bias or ineffectiveness.

## C. Petitioner's Motions

In the interest of justice, the court will grant Overstreet's many requests to expand his arguments and evidence and has considered all of his submissions. The court finds no merit, however, to Overstreet's motions to bar any production of new evidence by the prosecutor. As Overstreet challenged the effectiveness of counsel's representation, respondent was entitled to obtain an affidavit from counsel in defense to such claims. Moreover, the court is satisfied that petitioner's repeated motions to remove the prosecutor from the case have no basis in law or fact; they will be dismissed.

Overstreet asserts that the court should order an evidentiary hearing to allow further development of facts counsel could have presented at trial or sentencing. However, "[a] habeas corpus petitioner is entitled to an evidentiary hearing only to resolve disputed issues of material fact. . . . The petitioner must present a colorable claim to relief by showing that the alleged additional facts, if true, would at least arguably compel the granting of the writ." Poyner v. Murray, 964 F.2d 1404, 1422 (4th Cir. 1992). As Overstreet fails to present any colorable claim for relief under § 2255, the court cannot find that an evidentiary hearing is warranted.[23]

Overstreet has also filed several motions to expedite this case and motions for release on bond, based on his serious medical conditions and his "actual innocence." As the court finds no ground on which he is entitled to relief under § 2255, however, these motions must be denied. In any event, the motions to expedite are moot, because the court expedited review of this case to the extent possible in light of Overstreet's continual amendment and supplementation of his pleadings and allegations.

## III

---

[23] Similarly, the court finds no justification to grant petitioner the previously requested discovery items (some signed letters and a recording on his computer hard drive). See Dkt. No. 8. Overstreet fails to show that these items would prove any claim on which he would be entitled to habeas relief.

19

In conclusion, the court finds no ground upon which Overstreet is entitled to relief under § 2255. Many of the issues addressed in his claims have already been rejected by the United States Court of Appeals for the Fourth Circuit during appeal proceedings, and he fails to demonstrate that his guilty plea was invalid or that counsel failed to provide constitutionally adequate representation. For the stated reasons, the court will grant the motion to dismiss. An appropriate order shall be issued this day.

The petitioner is advised that he may appeal this decision, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, if a circuit court of appeals justice or this court issues a certificate of appealability, pursuant to 28 U.S.C. §2253(c). A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. §2253(c)(1). If petitioner intends to appeal, petitioner must file a notice of appeal with this court within 60 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send copies of this memorandum opinion and accompanying order to petitioner and to counsel of record for the respondent.

ENTER: This 17th day of May, 2007.

*/s/ James C. Turk*
Senior United States District Judge